**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **DAWN JENNINGS** *on behalf of herself and all others similarly situated*, | \* | |
| | \* | |
| **Plaintiff,** | | |
| v. | \* | **Case No.: GJH-19-1895** |
| **DYNAMIC RECOVERY SOLUTIONS LLC,** | \* | |
| **Defendant.** | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Dawn Jennings brings this consumer protection action on behalf of herself and all others similarly situated alleging that Defendant Dynamic Recovery Solutions LLC attempted to collect a debt in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* ECF No. 5. Currently pending before the Court is Defendant's Motion to Dismiss the Amended Complaint. ECF No. 6. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss the Amended Complaint is granted, in part, and denied, in part.

**I.    BACKGROUND[1]**

At some point prior to March 2019, Plaintiff incurred a debt (the "Debt") to FIA Card Services, NA ("FIA Card Services"). ECF No. 5 ¶ 9. The agreement that created the Debt "states that it is governed by the laws of the State of Delaware (without regard to its conflict of laws

---

[1] Unless otherwise stated, the background facts are taken from Plaintiff's Amended Complaint, ECF No. 5, and are presumed to be true.

1

principles) and by any applicable federal laws." *Id.* ¶ 10. FIA Card Services subsequently sold the Debt to Defendant or otherwise enlisted Defendant to collect the Debt on its behalf. *Id.* ¶ 12.

By March 2019, Plaintiff had an account balance of $9,715.18, but any attempt to collect the Debt through legal action was time-barred. *Id.* ¶ 14; ECF No. 6-2 at 2.[2] Regardless, on March 7, 2019, Defendant sent Plaintiff a letter (the "Letter") in an attempt to collect the Debt, indicating that Cavalry SPV I, LLC ("Cavalry") was the current creditor. ECF No. 5 ¶ 13; ECF No. 6-2 ¶ 6-2. The Letter offered Plaintiff options to "resolve" her account by paying an amount less than the account balance. ECF No. 5 ¶ 15; ECF No. 6-2 at 2.[3] Specifically, the Letter provided the following three settlement offers:

> 1. Our office will allow you to resolve your account for $4,371.83. Your payment is due on April 21, 2019. We are not obligated to renew this offer. Upon receipt and clearance of this payment, this account will be considered satisfied and closed. A satisfaction letter will be issued or;
>
> 2. Our office will allow you to resolve your account for $4,857.59 in 2 payments of $2,428.80 and $2,428.79. Your first payment is due on April 21, 2019. We are not obligated to renew this offer. To comply with this offer, payments should be no more than 30 days apart. Upon receipt and clearance of these two payments, this account will be considered satisfied and closed. A satisfaction letter will be issued or;
>
> 3. Our office will allow you to resolve your account for $5,343.35 in 3 payments of $1,335.84 and a final payment of $1,335.83. Your first payment is due on April 21, 2019. We are not obligated to renew this offer. To comply with this offer, payments should be no more than 30 days apart. Upon receipt and clearance of these four payments, this account will be considered satisfied and closed. A satisfaction letter will be

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[3] The Letter is not attached to the Amended Complaint, but the Amended Complaint quotes from the Letter, which serves as the sole basis for the Complaint. Thus, the Court can consider the Letter without converting the Motion into a motion for summary judgment. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly … consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." (internal citations omitted)).

issued[.]

ECF No. 5 ¶ 15; ECF No. 6-2 at 2. The Letter separately stated, "The law limits how long [Plaintiff] can be sued on a debt. Because of the age of [Plaintiff's] debt, Cavalry and [Defendant] cannot sue you for it and Cavalry and [Defendant] cannot report it to any credit reporting agency." ECF No. 5 ¶ 16; ECF No. 6-2 at 2.

After receiving this letter, Plaintiff filed a Complaint against Defendant in this Court on June 27, 2019 on behalf of herself and a purported class of similarly situated individuals.[4] ECF No. 1. Plaintiff later amended the Complaint on September 10, 2019. ECF No. 5. Plaintiff alleges that the Letter violates §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f of the FDCPA because it attempts to collect a time-barred debt without "disclos[ing] or warn[ing] consumers that by agreeing to the settlement offers, or by making a partial payment, they would be removing the statute of limitations bar on the debts and would effectively be granting [Defendant] the ability to sue to collect the debts." *Id.* ¶ 3. On September 23, 2019, Defendant filed a Motion to Dismiss the Amended Complaint. ECF No. 6.[5] Plaintiff filed an opposition on October 7, 2019, ECF No. 7, and Defendant filed a reply on October 14, 2019, ECF No. 8.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*,

---

[4] According to the Amended Complaint, this class consists of "[a]ll natural persons residing in the United States to whom [Defendant] mailed a letter, substantially similar to the Letter sent to Plaintiff, in an attempt to collect a debt allegedly incurred to FIA Card Services, NA, where the postcard was not returned as undeliverable." ECF No. 5 ¶ 27.

[5] Before Plaintiff filed the Amended Complaint, Defendant filed a Motion to Dismiss the Complaint. ECF No. 4. This Motion will be denied as moot.

3

Case No. RDB–12–237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). A motion to dismiss under 12(b)(6) "test[s] the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50 (1989)).

### III. DISCUSSION

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). "The Act 'is a strict liability statute and a consumer only has to prove one violation to trigger liability.'" *Long v. Pendrick Capital Partners II, LLC*, 374 F. Supp. 3d 515,

531 (D. Md. 2019) (quoting *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 500 (D. Md. 2004)). "To succeed on a FDCPA claim, a plaintiff must demonstrate that '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Id.* (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759–60 (D. Md. 2012)). There is no dispute that the Amended Complaint alleges that Plaintiff has been the object of collection activity arising from consumer debt and that Defendant is a debt collector. Thus, the only issue is whether the Amended Complaint sufficiently alleges conduct prohibited by §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f of the FDCPA. For the reasons that follow, the Court finds that the Amended Complaint sufficiently alleges conduct prohibited by §§ 1692e, 1692e(2), and 1692e(10), but not §§ 1692d or 1692f.

    **A. Section 1692d**

Section 1692d of the FDCPA prohibits a "debt collector" from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute provides a non-exhaustive list of prohibited conduct, including:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of [the FDCPA].
> (4) The advertisement for sale of any debt to coerce payment of the debt.
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

5

> (6) Except as provided in section 1692b of [the FDCPA], the placement of telephone calls without meaningful disclosure of the caller's identity.

*Id.* §§ 1692d(1)–(6).

Here, Plaintiff does not allege that Defendant used or threatened violence, used obscene or profane language, published her name, advertised for sale of the Debt, or made any telephone calls related to the Debt. Rather, she alleges only that Defendant mailed a letter offering to resolve the time-barred Debt without disclosing that certain actions by Plaintiff could potentially result in Defendant's renewed ability to sue for the Debt, and she conclusively states that this is behavior "the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt." *See* ECF No. 5 ¶¶ 13–17, 42. Plaintiff makes no argument, however, as to how the Letter constitutes harassment, oppression, or abuse, and the Court can conceive of no theory under which a single letter that contains no threats or profane language could rise to the level of a § 1692d violation. *See Jefferson v. Select Portfolio Servicing, Inc.*, Case No. PWG–15–2031, 2016 WL 3551835, at *5 (D. Md. June 30, 2016) (finding that vague allegations of several dunning notices that misrepresented the status of the sender as a creditor did not violate § 1692(d)); *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, Case No. 8:15–CV–2380–T–33TGW, 2016 WL 409633, at *7 (M.D. Fla. Feb. 3, 2016) (finding that allegations that debt collector sent "one piece of mail once a month" that did not contain abusive language and did not threaten debtor or contact debtor's friends, family, or co-workers were insufficient to state a claim for harassment under § 1692d of the FDCPA). Thus, Plaintiff's § 1692d claim is dismissed.

**B. Sections 1692e, 1692e(2), and 1692e(10)**

Section 1692e prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes "[t]he false representation of … the character, amount, or legal status of any debt," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* §§ 1692e(2), (10). "The Fourth Circuit has adopted the 'least sophisticated consumer' standard to determine if a Section 1692e violation has occurred," meaning a misrepresentation is actionable so long as it would mislead the "least sophisticated consumer." *Stewart*, 859 F. Supp. 2d at 761 (citing *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135–36 (4th Cir. 1996)). "[T]he test is the capacity of the statement to mislead; evidence of actual deception is unnecessary." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 139. Misleading statements are actionable when they influence a consumer's decision about "how to respond to efforts to collect the debt." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 127 (4th Cir. 2014).

Plaintiff contends that the Letter violates these provisions of the FDCPA because Defendant failed to disclose that accepting one of the Letter's three settlement offers or making a partial payment on the Debt could restart the statute of limitations under Delaware law, thus exposing Plaintiff to a potential lawsuit. In opposition, Defendant contends that Maryland law applies and because Maryland law provides that a consumer debt cannot be revived under any circumstances, it complied with its obligations under the FDCPA.

As a preliminary matter, the parties are correct in their respective interpretations of Delaware and Maryland law. Plaintiff is correct that under Delaware law, acknowledgment of a debt, a promise to pay a time-barred debt, or a partial payment toward a time-barred debt can remove the statute of limitations on that debt under certain circumstances. *See Snyder v.*

7

*Baltimore Trust Co.*, 532 A.2d 624, 626 (Del. Super. Ct. 1986) (stating that "a clear, distinct and unequivocal acknowledgement of a subsisting debt and a recognition of an obligation to pay it" can remove a case from the statute of limitations (quoting *Kojro v. Sikorski*, 267 A.2d 603, 607 (Del. Super. Ct. 1970) (internal quotation marks omitted))); *Hart v. Deshong*, 8 A.2d 85, 87 (Del. 1939) (stating that "when the acknowledgment or part payment is direct and unconditional and the surrounding circumstances are such that the law implies a promise to pay, then the bar of the Statute [of limitations] is lifted"). And Defendant is correct that under Maryland law, "[n]otwithstanding any other provision of law, any payment toward, written or oral affirmation of, or any other activity on the debt that occurs after the expiration of the statute of limitations applicable to the consumer debt collection action does not revive or extend the limitations period." MD. CODE ANN., CTS. & JUD. PROC. § 5-1202(b)(1).

The Court must determine the applicable law using the forum state's choice of law rules. *See Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011). "Under Maryland choice of law rules, Maryland courts generally enforce choice of law provisions in contracts," *Jos. A. Bank Clothiers, Inc. v. J.A.B.-Columbia, Inc.*, Case No. ELH–15–3075, 2017 WL 75746, at *2 (D. Md. Jan. 6, 2017), unless the application of the chosen law "is contrary to a fundamental policy of Maryland," *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 336 Md. 606, 612 (1994)). Thus, as dictated by the choice of law provision in the agreement covering the Debt, Delaware's substantive law will apply to the issues in this case.

Maryland courts, however, have also "followed the general rule that the statute of limitations of the forum state applies even when that state's choice of law rules require that another state's substantive law be applied." *Sherwin-Williams Co. v. ARTRA Grp., Inc.*, 125 F. Supp. 2d 739, 756 (D. Md. 2001) (citing *Morley v. Cohen*, 610 F. Supp. 798, 827 (D. Md.

1985)). "This is true even when, as here, the contract explicitly includes a choice of law provision specifying that out-of-forum law applies to the agreement, because the statute of limitations is a procedural, rather than a substantive, issue." *Id.* at 757; *see also Akinmeji v. Jos A. Bank Clothiers, Inc.*, 399 F. Supp. 3d 466, 472 (D. Md. 2019) ("Maryland courts almost universally view issues pertaining to the statute of limitations as procedural, not substantive.").

This leaves the Court with the question of whether the effect of an acknowledgement or partial payment of a debt on the viability of a debt collection action is procedural because it implicates the statute of limitations, and is therefore subject to Maryland law, or substantive, and is therefore subject to Delaware law. "Undertaking that determination presupposes that a discernable purpose lies behind Maryland's substantive-procedural dichotomy, but one would be hard pressed to find a coherent statement of purpose in Maryland's choice of law cases." *Standard Reserve Holdings, Ltd. v. Downey*, Case No. 24–C–04–0661, 2004 WL 3316264, at *3 (Md. Cir. Ct. 2004); *see* Richard W. Bourne, *Modem Maryland Conflicts: Backing into the Twentieth Century One Hauch at a Time*, 23 U. Balt. L. Rev. 71, 81 (1993) ("Maryland's courts have failed to come up with a rational test for analyzing cases on the borderline between substance and procedure."). In the end, however, it appears that laws governing "real-world" activity are characterized as substantive, while laws governing access to a forum's courts are procedural. *See Downey*, 2004 WL 3316264, at *6 (citing *Hauch v. Connor*, 295 Md. 120, 125 (1983) and Raleigh C. Minor, CONFLICT OF LAWS § 205 (1901)).

Here, the application of the procedural-substantive dichotomy is a difficult question that the parties largely gloss over. On one hand, revival of a debt collection action due to the acknowledgement or partial payment of a debt could be framed purely as a qualification of the statute of limitations for those actions, therefore warranting a procedural characterization. On the

9

other hand, whether acknowledgement or partial payment of a debt would reopen a debtor to legal liability for that debt surely affects the real-world activity of debtors; indeed, if debtors knew that they were likely to make themselves vulnerable to suit by making a payment toward a debt, they would be less likely to make that payment than if they knew they would be protected from legal action. The Court determines that the latter characterization is a more accurate and honest characterization of the potential for revival of a debt collection action, and so it concludes that it is a substantive matter.[6] Thus, it will apply Delaware law in this case.[7]

Having determined that an acknowledgment or partial payment of the Debt could have revived the statute of limitations on the Debt, the Court must now determine whether a letter offering options for settling a time-barred debt violates the FDCPA where it states that it cannot sue for the Debt but does not advise the consumer that acknowledgment of the debt or a partial payment could restart the statute of limitations on the debt. The Fourth Circuit has not addressed this particular question, but at least one district court within the Fourth Circuit has determined an allegation of this sort of conduct is a plausible FDCPA violation. *See Alston v. Midland Credit Mgmt., Inc.*, Case No. 8:18–cv–14–AMQ, 2018 WL 3309725, at *3 (D.S.C. July 3, 2018) (denying a motion to dismiss where the plaintiffs alleged that the defendant violated §§ 1692e, 1692e(2), and 1692e(10) by failing to advise the plaintiffs that a partial payment of a debt subject to collection could restart the statute of limitations clock, thus exposing the plaintiffs to a

---

[6] This conclusion is bolstered by the decision in *Stimpson v. Midland Credit Mgmt., Inc.*, 347 F. Supp. 3d 538 (D. Idaho 2018), where the District of Idaho considered a case with remarkably similar facts. There, the agreement covering the debt contained a choice of law provision stating that Nevada law governed the credit agreement. 347 F. Supp. 3d at 545. Despite sitting in Idaho, the Court concluded that Nevada law, which provided that a partial payment on a time-barred debt did not revive the statute of limitations, applied in that case. *Id.* Although the Court dispensed with any choice-of-law analysis, its conclusion suggests that it viewed the matter as substantive, rather than procedural; otherwise, logic suggests it would have applied Idaho's law as a procedural matter.

[7] Defendant contends that even if revival is a substantive matter, application of Delaware law would be contrary to Maryland public policy. At the motion to dismiss stage, however, the Court is not prepared to conclude that application of Delaware law would be contrary to Maryland public policy as a matter of law and therefore declines to make that assessment at this time.

potential lawsuit on the debt). Courts in other circuits have also held that this sort of conduct violates the FDCPA. *See Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 685–86 (7th Cir. 2017) (granting summary judgment to plaintiff where defendant's dunning letter failed to warn debtor about the risk of losing the protection of the relevant statute of limitations); *Pierre v. Midland Credit Mgmt., Inc.*, Case No. 16 C 2895, 2018 WL 723278, at *7 (N.D. Ill. Feb. 5, 2018) (same); *Smothers v. Midland Credit Mgmt., Inc.*, Case No. 16–2202–CM, 2016 WL 7485686, at *5 (D. Kan. Dec. 29, 2016) (same).

Although none of these cases are binding, the Court finds their reasoning persuasive. "[A] debtor who accepts the offered terms of settlement [in a dunning letter] will, by doing so, waive his otherwise absolute defense under the statute of limitations. Only the rarest consumer-debtor will recognize this danger." *Panoja*, 852 F.3d at 684. "[A]n unsophisticated consumer debtor who makes the first payment or who promises to make a partial payment is much worse off than he would have been without taking either step. If he then fails or refuses to pay further, he will face a potential lawsuit … [either for] the original amount of the debt or just the smaller amount of the settlement offer. Either way, the debtor will be much worse off" than if he had not responded to the dunning letter and retained the absolute protection of the statute of limitations. *Id.* at 685. "Silence about that significant risk of losing the protection of the statute of limitations renders [a debt collector's]'s dunning letter misleading and deceptive," *id.*, because it would certainly influence a debtor's decision about "how to respond to the efforts to collect the debt," *see Powell*, 782 F.3d at 127.

Here, Plaintiff alleges that Defendant sent a debt-collection letter offering options for settling a time-barred debt and stating that it could not sue for the Debt without also advising her that acknowledging the Debt or making a partial payment would effectively restart the statute of

11

limitations. Thus, she has stated a plausible claim that Defendant violated §§ 1692e, 1692e(2), and 1692e(10) of the FDCPA because "[t]he least sophisticated consumer most certainly would not be aware that making a payment could make the debt judicially enforceable—particularly when the collector tells the consumer that the law limits how long she can be sued and that the collector will not sue." *See Smothers*, 2016 WL 7485686, at *5; *see also Panoja*, 852 F.3d at 685–86; *Pierre*, 2018 WL 723278, at *7; *Alston*, 2018 WL 3309725, at *3. Accordingly, Defendant's Motion to Dismiss is denied as to Plaintiff's §§ 1692e, 1692e(2), and 1692e(10) claims.

### C. Section 1692f

Section 1692f prohibits a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "The statute does not define 'unfair or unconscionable,' but it does provide a non-exhaustive list of conduct that violates the section." *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 366 (D. Md. 2010). This conduct includes "[t]he collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law" and "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the communication." 18 U.S.C. §§ 1962f(1), (5). "Significantly, however, courts have limited § 1692f's prohibitive reach to conduct that is 'separate and distinct' from other FDCPA violations and thus dismiss § 1692f claims where a plaintiff fails to allege any misconduct beyond that which violates the other provisions of the FDCPA asserted in the complaint." *Cooke v. Carrington Mortg. Servs.*, Case No. TDC–18–205, 2018 WL 6323116, at *6 (D. Md. Dec. 3, 2018) (citing *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013)); *see also Archie v. Nagle & Zaller, P.C.*, Case No. 18–1979, 2019 WL 5212213, at *1 n.1 (4th Cir. Oct. 16, 2019).

Here, Plaintiff's § 1692f claim is identical to her §§ 1692e, 1692e(2), and 1692e(10) claims. Specifically, Plaintiff alleges that Defendant's Letter violated § 1692f by attempting to collect a time-barred debt without disclosing that agreeing to the settlement offers or making a partial payment would remove the statute of limitations protection. Aside from stating conclusively that this conduct constituted "unfair and unconscionable means to collect a debt," Plaintiff makes no argument as to how this conduct is "separate and distinct" from the conduct covered by her §§ 1692e, 1692e(2), and 1692e(10) claims. Accordingly, Plaintiff's § 1692f claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted, in part, and denied in part. A separate Order shall issue.

Date: February 27, 2020                    ___/s/_____
                                           GEORGE J. HAZEL
                                           United States District Judge